IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

LUIS O. RIVERA,

    Plaintiff,

vs.

SPIRIT AIRLINES, INC.,
a Delaware Corporation,

    Defendant.
_____/

## COMPLAINT FOR DAMAGES

Plaintiff, LUIS O. RIVERA, hereby sues Defendant, SPIRIT AIRLINES, INC., and states as follows:

### Introduction

1. This is an action by LUIS RIVERA against his former employer for violations of the Family Medical Leave Act of 1993 and the Florida Whistle-Blower Protection Act. By the filing of this action, Plaintiff seeks damages and a reasonable attorney's fee.

### Jurisdiction

2. This action arises under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. The Court has jurisdiction over the claims pursuant to 29 U.S.C. §§ 1331, 1343(4) and 29 U.S.C. § 216(b).

3. The claim arose in Broward County, Florida, in the Fort Lauderdale Division of the United States District Court for the Southern District of Florida, which is where venue is proper.

1

4. The Court has supplemental jurisdiction over Plaintiff's state law claims under the Florida Whistle Blower Protection Act, pursuant to 28 U.S.C. § 1367(a), since those claims are so related to Plaintiff's FMLA claims that they form part of the same case or controversy.

## Parties

5. Plaintiff, LUIS RIVERA (hereafter "Plaintiff" or "RIVERA") is a resident of Broward County, Florida, and was, at all times material, employed by Defendant as a FAA-certified Quality Control Inspector, until his termination effective October 2, 2018.

6. At the time of his termination, RIVERA was an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2), in that he had been employed for at least twelve months by the Defendant and worked at least 1250 hours during the 12-month period prior to when he took FMLA-qualifying medical leave for a serious medical condition (hernia surgery) on September 4, 2018.

7. RIVERA was also an employee under the Florida Whistle Blower Protection Act ("FWBPA"), Chapter 448.102, *et seq.*, Fla. Stat., who was protected from retaliation based on his objections to an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation pertaining to the employer or its business.

8. Defendant, SPIRIT AIRLINES, INC. (hereafter "Defendant" or "SPIRIT") is a Delaware corporation that operates as a commercial air carrier with its corporate headquarters located in Broward County, Florida. SPIRIT is an employer as defined by 29 U.S.C. § 2611(4), which has employees subject to the provisions of the FMLA in the facility where Plaintiff was employed.

9. At all times material, SPIRIT employed more than 10 persons, and was an "employer" as defined by the FWBPA.

2

**Factual Allegations**

10.     Plaintiff, LUIS O. RIVERA, was employed by Defendant as a Quality Control Inspector from on or about May 28, 2009, until his summary termination effective October 2, 2018.

11.     In mid-2017, there was a vacancy for the position of Quality Control Supervisor in Fort Lauderdale, Florida. RIVERA was named the acting supervisor and was among those who was interviewed by Quality Control Manager John Hammond for the permanent position. Based on his training and experience with the A320 Airbus, which is the mainstay of SPIRIT's commercial fleet, RIVERA met or exceeded all of the requirements for the position.

12.     Pursuant to regulations promulgated by the Federal Aviation Administration (FAA) the Quality Control Supervisor position at SPIRIT requires an individual who is fully FAA-certified to perform maintenance and inspection on the Airbus A320. The key duties of the position include oversight of training and maintenance programs for the A320, providing technical support for assigned personnel, performing audits of maintenance procedures and updating the company's General Maintenance Manual (GMM) to ensure that all work performed is in accordance with FAA regulations applicable to the A320 Airbus.

13.      The GMM is directed toward compliance with the requirements of the Code of Federal Regulations (CFR) applicable to aircraft maintenance and alteration by setting forth instructions, procedures, and data for the accomplishment of maintenance functions that may not be set forth in the equipment manufacturer's publications. An air carrier's GMM is prepared in accordance with 14 CFR Part 121.369 (Manual Requirements) and 14 CFR Part 121 Subpart L (Maintenance, Preventative Maintenance, and Alterations). The policies and procedures contained in the GMM must be specifically approved and accepted by the FAA and SPIRIT mandates compliance

with all Operations Specifications, which include the GMM, in accordance with 14 CFR Part 119.43.

14. In order to effectively perform his or her job function, a Quality Control Supervisor must, at a minimum, have sufficient line maintenance or heavy check experience with the Airbus A320 to be able to read, comprehend and update the GMM and related documents for the A320.

15. During the selection process for the new Quality Control Supervisor, RIVERA learned that an individual named David Caballero had applied for the position at John Hammond's suggestion despite the fact that he lacked the necessary line maintenance experience with the Airbus A320 to properly manage a Part 121 maintenance program for the Airbus A320.

16. Spirit's Employee Handbook includes a "General Safety Policy" which states in part as follows:

> It is the responsibility of every Team Member of the Company to maintain a healthy and safe work environment. Please report all safety hazards and occupational illnesses or injuries to your Supervisor.  Failure to follow the Company's health and safety rules may result in corrective action, up to and including separation of employment.
>
> Open communication between Team Members and management is vital to the success of Spirit Airlines. One of the tenets of this organization is the respectful communication of all safety-related subjects. In the area of safety, we encourage Team Members to report real or perceived threats to the safe operation of airplanes and equipment as well as the safety of the work environment. There will be no retaliation against any person who brings information on items or issues that they deem pertinent to the safety of airline operations or Team Members. Any person coming forward with safety concerns will be given consideration regardless of the final outcome of any suggestion, report, or comment.

17. In accordance with the General Safety Policy, RIVERA provided information and supporting documentation SPIRIT's Human Resources Director, Edward Kayton, to support his objections to Caballero being hired for a QC Supervisor position without the proper FAA-certifications or experience to manage the company's maintenance program for the A320 Airbus. Mr. Kayton initially acknowledged RIVERA's concerns and referred the matter to HR Manager

Krystal Graves, who interviewed RIVERA by phone and met personally with John Hammond at SPIRIT's corporate headquarters in Miramar, Florida.

18. HR never followed up with RIVERA about his complaint after he was interviewed, and David Caballero was hired and retained in the QC despite RIVERA's objections and concerns about his lack of sufficient A320 qualifications or experience required by the FAA for his position.

19. David Caballero became RIVERA's supervisor after he was hired. Caballero was aware of RIVERA's objections to his hiring and it quickly became evident that Mr. Caballero did lack sufficient knowledge of the Airbus A320 to effectively do his job in accordance with FAA standards. As a result, RIVERA and other QC Inspectors often disagreed and took issue with many of Caballero's decisions and recommendations regarding maintenance issues and FAA-compliance, which resulted in additional work and caused ongoing friction between Caballero, RIVERA and other members of the Quality Control team.

20. Within a few months of being hired, Caballero grew frustrated with RIVERA having to constantly question and correct his decisions and directives with respect to maintenance issues. On August 18, 2017, pursuant to SPIRIT's Corrective Action Policy (5.9 Corrective Action Process) he issued RIVERA a "Final Written Warning" advising him that he was subject to termination if he did not improve his unacceptable performance in the following areas: (a) Repeated failure to be at your work area at the instructed time; (b) Unnecessary delay of assigned tasks and aircraft workload; (c) Repeated failures to be available for tasks when needed; and (d) Repeated failure to provide correct findings regarding various matters.

21. The Final Written Warning was a false narrative contrived by Caballero to deflect from his own deficiencies as QC Supervisor; RIVERA did not make any incorrect findings and any "delays" of assigned tasks usually resulted from Caballero's lack of experience with the A320 Airbus

and the extra work and effort that RIVERA had to make to cover for Caballero's lack of qualifications for his position. The Final Written Warning was to remain in RIVERA's personnel file for a year, or until August 18, 2018, after which it would be removed and could no longer be cited under Employee Handbook Policy 5.9, which states that "[c]orrectives issued more than twelve (12) months ago should not be considered in subsequent corrective action."

22. After Caballero issued RIVERA the Final Warning, the workplace disagreements and conflicts between them continued. For example, in September 17, 2017, there was an argument when Caballero accused RIVERA of taking too long to inspect an engine with a video borescope. Caballero wanted to clear the plane to fly but RIVERA noticed possible metal pieces lodged in the oil system. Based on what he felt was a potential risk to flight safety, RIVERA exercised his authority as a FAA-certified airframe and powerplant (A&P) mechanic to ground the airplane in Fort Lauderdale over David Caballero's objection. There was no spare airplane in Fort Lauderdale that day and the tooling required for the engine repairs was not on site, so the FAA allowed SPIRIT to fly the plane without passengers to Houston, Texas for repairs. RIVERA's strict adherence to FAA-regulations and his objections to Caballero's order to clear the plane to fly resulted in significant delays to the passengers who were scheduled for the flight and additional costs to SPIRIT. It also caused a heated confrontation when Caballero began an aggressive verbal assault on RIVERA that resulted in RIVERA calling BSO at the airport to send someone to keep the peace.

23. Following the grounding incident there were several other occasions in 2017 and 2018 when RIVERA objected to and disagreed with David Caballero's interpretation and application of FAA-regulations. During this period, RIVERA also followed up with Human Resources on several occasions to determine if any action had been taken on his complaint under the General Safety Policy and information he had submitted during the hiring process to support

6

his objections regarding Caballero's lack of FAA-mandated qualifications, experience and fitness for his position.

24. In August 2018, RIVERA notified David Caballero and Human Resources that he needed time off for hernia surgery on Tuesday, September 4, 2018 and that, following the surgery, he would be on light duty with lifting restrictions for several weeks.

25. RIVERA did not specifically request FMLA leave to cover his absence for surgery but provided sufficient information and certifications from his health are provider to put SPIRIT on notice that the medical leave was FMLA-qualifying. Defendant ultimately approved the leave and allowed RIVERA to use accrued vacation time instead of sick time for the surgery and recovery period.

26. On August 18, 2018, the Final Warning issued to RIVERA by David Caballero a year earlier expired under the terms of Defendant's disciplinary policies.

27. Just a few days prior to RIVERA's surgery, on or about August 31, 2018, he was sent to Orlando, Florida to conduct FAA-required training for SPIRIT personnel who used the company's specially designed video borescope to inspect the jet engines on the A320 Airbus. The required video borescope training and qualifications are part of SPIRIT's General Maintenance Manual (GMM) that is continuously revised and updated to remain in compliance with 14 CFR Part 121. Mr. Caballero had failed to keep track of which employees were due for video borescope training and if the training was not timely completed, the employees would have been unqualified to perform inspection or maintenance work under 14 CFR Part 121, which is a serious violation that could have resulted in aircraft being grounded and fines or other penalties being imposed by the FAA.

28. RIVERA objected to Caballero's incompetence in failing to timely schedule the required video borescope training and advised Caballero that his actions could result in FAA violations. Even though it was Caballero's responsibility as a Quality Control Manager to ensure compliance with applicable FAA regulations, he ordered RIVERA to fly to Orlando and conduct the video borescope training required for the GMM to remain in compliance with 14 CFR Part 121. Despite the pain from his hernia, RIVERA did as he was told and completed the Orlando recertification training that Caballero had failed to timely schedule. After returning from Orlando, RIVERA had his hernia surgery as scheduled on September 4, 2018.

29. RIVERA was scheduled to return to work two-weeks after his surgery on or about September 19, 2018.

30. On September 19, 2018, RIVERA received a call from Human Resources informing him that he was being suspended with pay because some allegations had been made against him while he was out for surgery and that his co-workers were no longer comfortable working with him. RIVERA was not given any additional details about the allegations or an opportunity to formally respond, but when he contacted some of his co-workers RIVERA learned that none of them had said anything negative about him to HR or made any allegations of misconduct.

31. During the phone call with Human Resources, RIVERA denied any misconduct and again asked about the status of his prior complaint regarding David Caballero and why it had apparently not been investigated despite the documentation he had submitted to HR during Caballero's hiring process a year earlier.

32. Two weeks after he was suspended, RIVERA received another call from HR advising him that the allegations his co-workers made during his absence could not be

substantiated. RIVERA was relieved at this news and thought it meant he was cleared to return to work, but instead, the HR representative told RIVERA that she had reviewed his file and that, despite the lack of evidence to support the recent complaint, he was still being terminated for a previous allegation of sexual harassment that she claimed had occurred over five years earlier.

33. RIVERA told the HR representative that he was surprised to hear this, because he was never advised of any prior sexual harassment complaints and never harassed any female employees. In addition, and notwithstanding the lack of any prior written notice to RIVERA about the alleged five-year old harassment complaint, the termination for an event that long ago would clearly violate Employee handbook Policy 5.9, which states that corrective actions expire after 12 months and cannot then be considered in subsequent corrective action.

34. Nevertheless, on October 8, 2018, RIVERA received a notice from HR Manager Dian Satchell, advising him that he was being terminated for having made repeated inappropriate comments towards female employees and for inappropriately touching one female co-worker, who was not even identified in the letter. No other facts or details were provided to substantiate the decision and, assuming the incident even occurred (which he denies), RIVERA was never given any notice of such a complaint during his entire employment with SPIRIT.

35. Following his termination, RIVERA contacted the supervisor that he worked for prior to David Caballero, who advised RIVERA that to his knowledge, there were no previous sexual harassment or other complaints made against RIVERA by any female employees.

36. At the time of his termination, RIVERA was meeting SPIRIT's expectations for his position and there was no pending disciplinary action in his employee file. In addition, SPIRIT's Corrective Action Policy (5.9 Corrective Action Process) states that "[c]orrectives issued more than twelve (12) months ago should not be considered in subsequent corrective action" and the incident

cited by HR for his termination occurred well over a year prior to the decision. Based on these facts and others, there are no legitimate, non-discriminatory reasons for RIVERA's summary termination by SPRIRIT, and insufficient evidence to support even a reasonable, good-faith belief in the reasons cited for the decision.

## Count I/FMLA Violations

37. Plaintiff LUIS O. RIVERA realleges the allegations of Paragraphs 1 through 36 above.

38. Among the substantive rights granted by the FMLA to eligible employees is the right to 12 workweeks of leave during any 12-month period to care for a child with a serious health condition, 29 U.S.C. § 2612(a)(1)(c), and the right following leave to be restored by the employer to the position of employment held by the employee when the leave commenced or to an equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA further prohibits discrimination or retaliation against an employee for exercising his FMLA rights or for opposing any practice made unlawful by the FMLA at 29 U.S.C. § 2615(a)(1).

39. Plaintiff was engaged in statutorily protected activity under the FMLA when he advised Defendant in August 2018 that he needed time off for hernia surgery and would be on light duty for several weeks following his surgery.

40. By terminating RIVERA within 30 days after he took FMLA-qualifying leave on September 4, 2018, Defendant denied or otherwise interfered with Plaintiff's substantive rights under the FMLA, and unlawfully discriminated and/or retaliated against Plaintiff for engaging in activity protected by the FMLA, in violation of 29 U.S.C. § 2615(a)(1) and (2).

41. There are no legitimate non-discriminatory or non-retaliatory reasons for Plaintiff's termination by Defendant.

WHEREFORE, Plaintiff, LUIS O. RIVERA, prays that this Court will:

A. Find Defendant's actions toward RIVERA to be violative of his rights under the FMLA;

B. Award RIVERA payment of all back wages and lost benefits found by the Court to be due under the FMLA;

C. Reinstate RIVERA to his position or award front pay in lieu of reinstatement;

D. Award RIVERA an additional equal amount of back and front pay as liquidated damages for Defendant's willful violations of the FMLA;

E. Grant such other and further relief as is just; and

F. Award Plaintiff his costs, including a reasonable attorney's fee.

## Count II/FWBPA Violation

39. Plaintiff LUIS O. RIVERA realleges the allegations of Paragraphs 1 through 36 above.

40. Under the FWBPA, § 448.102(3), employees are protected from retaliation based on their having objected to any activity, policy, or practice of the employer that is in violation of a law, rule, or regulation pertaining to the employer or its business.

41. SPIRIT is a commercial air carrier subject to compliance with regulations promulgated by the Federal Aviation Administration (FAA).

42. RIVERA engaged in protected activity under § 448.102(3) by objecting to and opposing Defendant's hiring of David Caballero in 2017 as Quality Control Supervisor for the A320 Airbus despite his lack of required FAA certifications and experience for the position. These objections and opposition were stated to Defendant's Human Resources Department on

several occasions, from when David Caballero was interviewed and hired in mid-2017 until RIVERA spoke to HR just a few days before he was notified of the termination decision in October 2018.

43. Additional protected activity occurred in September 2017 when RIVERA objected to David Caballero's improper decision to clear an airplane to fly and exercised his authority as a FAA-certified airframe and powerplant (A&P) mechanic to ground the airplane in Fort Lauderdale just before take-off due to metal pieces that had become lodged in the jet's oil system.

42. In late August and early September 2018, RIVERA further objected to David Caballero's decision to allow Orlando employees to continue working on SPIRIT airplanes even after their FAA certifications had expired due to Caballero's negligence, which was a clear violation of FAA regulations.

44. As a result of Plaintiff's cumulative protected activity, including his objections to David Caballero's lack of FAA-mandated qualifications and experience on the A320 Airbus, the ongoing conflict with Caballero over RIVERA's objections to his workplace decisions that violated FAA regulations and RIVERA's own strict adherence to FAA regulations, SPIRIT terminated from his employment for pretextual reasons, causing RIVERA to suffer compensatory damages, including, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

WHEREFORE, Plaintiff, LUIS O. RIVERA, respectfully requests the entry of judgment in his favor:

A. Declaring Defendant's conduct to be in violation of the FWBPA;

B. Enjoining Defendant from further engaging in such conduct;

C. Awarding RIVERA back pay, front pay in lieu of reinstatement and other compensatory damages;

D. Awarding RIVERA his costs and reasonable attorney's fees pursuant to § 448.104, Fla. Stat., and;

E. Granting such other and further relief as may be deemed just and proper.

Respectfully submitted,

_____
Christopher C. Sharp, Esq.
Fla. Bar No. 996858
E-Mail: csharplaw@aol.com
SHARP LAW FIRM, P.A.
1600 West State Road 84, Suite C
Fort Lauderdale, Florida 33441
Telephone: (954) 909-4246
Facsimile: (954) 827-8028

Dated: September 16, 2019        Counsel for Plaintiff LUIS O. RIVERA